J-A17001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LOBAR ASSOCIATES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD J. O'NEILL AND CARLA C. | : | |
| O'NEILL, H/W | : | |
| | : | |
| Appellants | : | No. 3525 EDA 2016 |

Appeal from the Judgment Entered October 13, 2016
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  2015-001654

BEFORE:   GANTMAN, P.J., RANSOM, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 17, 2017**

Appellants, Edward J. O'Neill and Carla C. O'Neill, h/w, appeal from the summary judgment entered in the Delaware County Court of Common Pleas, in favor of Appellee, Lobar Associates, Inc., in this Mechanics' Lien case.  We affirm.

The trial court correctly set forth the relevant facts and procedural history of this case as follows:

> [Appellee] commenced this matter to enforce a mechanics' lien for work that it performed on [Appellants'] property under contract with an individual or entity affiliated with [Appellants'] tenant, Radnor Carmel Café and Wine Bar, LLC ("Radnor Carmel Café").  The only defense asserted by [Appellants] in the pleadings and at oral argument was that their lease with Radnor Carmel Café did not constitute a writing signed by [Appellants] providing that improvements made to [Appellants'] property were for [Appellants'] "immediate use and benefit" and, therefore,

_____

*Retired Senior Judge assigned to the Superior Court.

[Appellee's] claim was precluded under the Pennsylvania Mechanics' Lien Law.

[Appellants] are the fee simple title holders of the real property located at 372 West Lancaster Avenue, Wayne, Radnor Township, Delaware County, Pennsylvania 19087 (the "Subject Property"). On February 11, 2013, [Appellee] entered into an agreement with an entity affiliated with Radnor Carmel Café and known as Carmel Café & Wine Bar ("Carmel Café") to provide labor and materials in performing construction work at the Property so that the Property could be used to operate a restaurant and wine bar. Under the agreement, [Appellee] was to be paid for the cost of its work plus an eight percent fee without a guaranteed maximum price.

At that time, Radnor Carmel Café was occupying the Property as a lessee pursuant to a written lease agreement (the "Lease") with [Appellants]. The Lease includes the following pertinent provisions:

Recognition that the central purpose of the Lease was for Radnor Carmel Café to renovate the Property to make it suitable for the operation of a Carmel Café and Wine Bar Restaurant.

Radnor Carmel Café was obligated to pay rent to [Appellants] during the term of the lease. (Lease, §§ 3.01-3.02).

Radnor Carmel Café was required to submit to [Appellants] for approval the plans and specifications for Radnor Carmel Café's improvements to the Property. (Lease, § 5.02).

[Appellants] agreed to fully cooperate with Radnor Carmel Café in connection with Radnor Carmel Café obtaining permits and approvals for Radnor Carmel Café's improvements to the Property. (Lease, § 5.03).

Following the completion of Radnor Carmel Café's improvements to the Property, Radnor Carmel Café's right to undertake changes, alterations and additions

- 2 -

> to the Property that would serve to negatively impact the value of the Property was subject to [Appellants'] prior written approval. (Lease, § 5.09).
>
> [Appellants] were obligated to repair and maintain the Property, including all structural portions of the building such as the roof, exterior and interior structural walls, slab floors and foundations. (Lease, § 6.03).
>
> Upon the conclusion of the lease term or earlier termination, all improvements were to become the property of [Appellants]. (Lease, § 13.01).

Consistent with the terms of the Lease, [Appellants] had the opportunity to review Radnor Carmel Café's preliminary plans for the Project and executed a writing agreeing that the preliminary plans were acceptable. [Appellants] cooperated and assisted Radnor Carmel Café's obtaining approvals for the improvements to the Property by executing Radnor Carmel Café's application to the Township of Radnor Design Review Board. Appellants paid $12,373.40 directly to [Appellee] for the structural repair work necessary to complete the Project.

During the construction phase of the Project, [Appellee] performed all work as contracted. On October 13, 2013, [Appellee] submitted its final applications for payment to Carmel Café. [Appellee] billed $1,109,670.50 for its time and materials pursuant to its agreement with Carmel Café. Despite accepting all the work [Appellee] performed, Carmel Café failed to make payment of the final $199,011.64 due and owing under the agreement.

On or about April 7, 2014, pursuant to the Pennsylvania Mechanics' Lien Law, 49 P.S. § 1502, [Appellee] filed a Mechanics' Lien Claim, in the Court of Common Peas of Delaware County, Pennsylvania, at Docket No. 2014-03304, against the Property in the amount of $199,011.64. On February 23, 2015, [Appellee] filed its Complaint to Enforce Mechanics' Lien Claim against [Appellants], commencing this action. On April 15, 2015, [Appellants] filed Preliminary Objections, arguing that the improvements to the Property were not for [Appellants']

immediate use and benefit. By order dated June 5, 2015, this [c]ourt overruled [Appellants] Preliminary Objections. Thereafter, [Appellants] filed an Answer, which raised no affirmative defenses in new matter. In their Answer, [Appellants'] sole asserted defense is that the improvements made by [Appellee] under its agreement with Carmel Café to the Property were not for [Appellants'] immediate use and benefit.

(Trial Court Opinion, filed February 6, 2017, at 1-4) (some internal citations to record omitted). Appellee filed a motion for summary judgment on April 22, 2016, and on May 23, 2016, Appellants filed a cross-motion for summary judgment. Following oral argument, on October 13, 2016, the court granted Appellee's motion for summary judgment, denied Appellants' motion for summary judgment, and entered judgment in favor of Appellee for $199,011.64. Appellants timely filed a notice of appeal on November 9, 2016. On November 15, 2016, the court ordered Appellants to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellants timely complied on December 2, 2016.

Appellants raise one issue for our review:

DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF [APPELLEE] AND AGAINST [APPELLANTS] AND IN HOLDING ON SUMMARY JUDGMENT THAT THE IMPROVEMENTS COMPLETED BY [APPELLEE] ON THE PROPERTY WERE FOR THE IMMEDIATE USE AND BENEFIT OF [APPELLANTS]?

(Appellants' Brief at 2).

Review of an order granting summary judgment asks us to determine whether the trial court abused its discretion or committed an error of law.

*Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000)

(internal citations omitted). Our scope of review is plenary. *Pappas v.*

*Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536

U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002).

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of

- 5 -

law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

"A mechanics' lien is a statutory proceeding, the action *in rem* being in the nature of collateral security for the payment of the debt due for work done or materials furnished in accordance with a contract, express or implied. ***Kelly v. Hannan***, 566 A.2d 310, 314 (Pa.Super. 1989). A Mechanics' Lien case is not an action at common law; it is a particular type of lien against real estate pursuant to statute. ***Id.*** "The right to a mechanic's lien must have a contract as its basis." ***Id.***

Section 1303 of the Mechanics' Lien Law of 1963 provides, in pertinent part:

### § 1303.  Lien not allowed in certain cases

\* \* \*

(d)    Leasehold premises.  No lien shall be allowed against the estate of an owner in fee by reason of any consent given by such owner to a tenant to improve the leased premises unless it shall appear in writing signed by such owner that the erection, construction, alteration or repair was in fact for the immediate use and benefit of the owner.

49 P.S. § 1303(d).

> The fact that the [owner] had knowledge of and consented to the repairs made is not in itself sufficient. If the law were otherwise, the cost of almost every alteration made by a tenant could be the subject of a lien against the owner. In order for the claim to be valid against the estate of the owner, where he is not a party to the [construction] contract, his consent must appear in the form of a written statement, signed by him, and which shall also state that the improvement is made for his immediate use and benefit. This is a condition precedent. The claim filed must on its face show the existence of such consent to satisfy this requirement. Every mechanics' lien must be self-sustaining.

***Murray v. Zemon***, 402 Pa. 354, 359, 167 A.2d 253, 255-56 (1960). A signed lease agreement between an owner and a tenant, which allows for construction and improvements on the leasehold, is sufficient to satisfy the "writing" requirement of the statute, provided the lease shows the improvements will redound to the owner's benefit. ***See American Seating Co. v. City of Philadelphia***, 434 Pa. 370, 256 A.2d 599 (1969). Courts should look to the central purpose of the writing when deciding if it benefits the owner. ***Id.***

Instantly, responding to Appellants' issues, the court reasoned as follows:

> In the present matter, certain provisions of the Lease demonstrate the improvements to the Property were for [Appellants'] immediate use and benefit. Accordingly, as a matter of law, the [Appellants] are required to make payment to [Appellee] in satisfaction of the improvements. [Appellants] recognized the central purpose of the Lease was for the construction of the improvements at issue. The Lease required [Appellants] to pay for certain portions

of the improvements, namely, those pertaining to the structural portions of the building and, in fact, [Appellants] did so during the Project. Under the Lease, [Appellants] agreed to cooperate in the construction, permitting and approval process to complete the Project. At the conclusion of the Lease, which could be terminated in the event of Radnor Carmel Café's default, [Appellants] became the owner of all improvements to the Property. The provisions of the Lease specifically identified earlier in this Opinion are far beyond that which is required to meet the "immediate use and benefit standard" under Section 1303(d) of the Pennsylvania Mechanics' Lien Law of 1963.

CONCLUSION

For the foregoing reasons, the [court's decision] should not be disturbed.

(Trial Court Opinion at 8). Upon review of the record and the applicable law, we agree. The provisions of the lease between Appellants and Radnor Carmel Café make clear the purpose of the lease was to improve the property for mutual benefit. We emphasize those provisions which (a) call for collaboration of Appellants and Radnor Carmel Café in the renovation project of the Property, (b) require Appellants' prior written approval for changes, alterations and additions to the Property which would negatively impact the value of the Property, and (c) declare all improvements would be property of Appellants upon expiration of the lease term or earlier termination. Thus, we conclude, the provisions of the lease satisfy the "immediate use and benefit standard" of the statute. Accordingly, we affirm.

Judgment affirmed.

Judge Platt joins this memorandum.
Judge Ransom files a dissenting memorandum.

- 8 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/17/2017